May it please the Court, Tacey Flint, for a Defendant Appellant Artko. I'd like to focus on two issues today. First, the District Court made a legal error in holding that specific intent to save the vessel in question is not required for a salvage award. Under long-standing case law, the plaintiffs here were not entitled to a salvage award from Artko because they didn't have specific intent to save Artko property. Second, even if there was salvage, the award in this case was an abuse of discretion because it was premised on legal error. Most clearly, the Court recognized that the circumstances required an award smaller than the award that this Court approved in Margate, but the District Court went on to approve a percentage nearly twice as high, resulting in a salvage award beyond all historical bounds. If the award is allowed to stand at 20% of the value of the saved vessels, that will be among the highest percentage awards permitted in American law and will dramatically disrupt the law of salvage. I'll start with specific intent. The District Court made a legal error when it concluded that salvage law doesn't require the salver to intend to save the property in question. Cases throughout history have required intent to save the property. In Merritt, the Supreme Court held that there was no salvage where the plaintiffs put out a fire on a pier. Putting out that fire kept a vessel moored to the pier safe, but the Court held that that wasn't salvage because the plaintiffs acted, and I'm quoting, for the purpose of extinguishing the fire on the pier, not to save the vessel. In Henner v. United States, the Court said, and again, I quote, salvage law requires that to be a salver, a party must have the intention to save the property involved. And in Berry v. Boat, G. and Nina, the Court held that a claimant was not a salver because it had pulled up the defendant's lobster traps unintentionally. It had retained those traps on its boat without the intent of rescuing them, and its efforts were not designed to rescue the property in question. The different cases on fires make this clear. The Court in Atlantis Marine Towing walked through this analysis. So there's Merritt, which I talked about before. In that case, the plaintiffs put out a fire on a pier, and the Court said no salvage because the intention of the efforts was to save the pier. But then the Atlantis Marine Court talked about another case called the Neshaminy, where a barge was attached to a floating dry dock. There was a fire on the dry dock. The salvage plaintiffs put that fire out, and the Court said that is salvage because those plaintiffs did have the intent of saving the barge when they put out the fire on the dry dock. The Atlantis Marine Court likewise held that it was not salvage. They rejected the defendant's argument that there was, excuse me, the plaintiff's argument that salvage requires putting out a fire on a particular vessel, and said- Is there a single, solitary, solely animating intent, or can there be coexisting states of intent? The critical question is, is there intent to save that vessel? There can certainly be other motives, but when the plaintiffs are- there can be motives when the plaintiffs are acting. The question is, is there intent to save that vessel that they're working on? Well, the district court found alternatively that they did, correct? Well, in this court, in this case, the district court found that the plaintiffs had a desire to save downriver property. It said non-lower river property. Not just property owned by the plaintiffs, but also property downriver. That finding did not reflect a specific intent to save ARTCO vessels. I remember the district court saying alternatively that they did have- the salvage had specific intent, and maybe I read it wrong, but I thought as an alternative, or in combination with what it found about the downriver, but maybe I'm wrong. I believe the court's referring to paragraph 14 in the conclusions of law, and the court did make an alternative holding. First, the district court said there's no specific intent requirement, and then it said, but I find these plaintiffs had an intent to save non-lower river property. It did not say, I find that these plaintiffs had an intent to save ARTCO property specifically. And that's a critical difference in the case law. As this court explained in Margate, the purpose, the concept of salvage awards is to incentivize conduct. It's to incentivize salvers to save imperiled property at sea. It doesn't make sense to talk about incentivizing unintentional conduct. It doesn't make sense to talk about a vessel owner reaching a hypothetical agreement with a potential salver to unintentionally benefit the vessel owner's property. Because the case law focuses on incentives and hypothetical agreements, that's where the specific intent requirement comes from. And keep in mind that salvage, of course, is an exception. It's different from land-based law, which does not allow this kind of compelled payment by an owner to a rescuer of the property. This is unique to salvage, and it's a constraint that the case has clearly put on salvage awards that they must follow from specific intent to save that vessel. Now, the plaintiffs have talked about motive. They've said motive is irrelevant. But motive and intent are clearly different. And again, this is throughout the case law. Intent is about what property are you trying to save. Motive is about why. Why are you taking these actions? So there are cases that make this very clear. If a vessel, it's not salvage if salvers take some action to save their own vessel. A clear case on this is the acorn. In that case, plaintiffs saw another vessel called the speedwell coming toward them. They put out fenders. The fenders made the collision between the speedwell and acorn minimal and caused the speedwell to go off to the side where it caused no damage to itself or any other vessel. But that court said no salvage because the crew of the acorn was trying to save their own vessel, not the speedwell. But the Benedict treatise, when it talks about motive, says there can be salvage if the salvers save a vessel with the motive of helping themselves. If their intent is to save a vessel, even though they're trying to save their own lives, that can be salvage. Benedict talks about a case called the F.I. Merriman. In that case, the crew of a distressed vessel, the scala, transferred from their vessel to the merriman. Their vessel was sinking. They jumped onto the merriman. They helped the merriman. They allowed it to navigate to port. And the court said, that is salvage. And we're not troubled by the fact that you jumped onto the merriman to save your own lives because you were trying to save the merriman. And that's what you need for salvage, intent to save that vessel. Why you saved that vessel doesn't matter. The record here is clear that there wasn't intent to save the art cobarges. Judge Stewart, you and I talked about the district court's finding. The finding did not relate to specific intent to save art cobarges. It said a general intent to save non-Lower River property, which is not the same as intent to save art cobarges. And this issue was clearly raised in the district court. Had the court, which of course heard all of the testimony, saw all of the exhibits, had seen support for a finding that these plaintiffs intended to save art cobarges, it surely would have said so. But it didn't. It said this comment about general desire to save non-Lower River property. And that's exactly what the record reflects. The plaintiffs testified that their purpose was to protect their own equipment. But they wound up— —didn't understand the law. I mean, you've got a very experienced trial judge who's been at it a long time. It's not to say errors can't be made. The case was briefed up on one side, briefed down on the other, in terms of the governing law. So, presumably, the point you raised was raised below, right? In terms of the requisite intent, so where, how did the district court, pun intended, get off course? —The court misread the case law as not requiring specific intent. And to be fair to the court, the case law sometimes uses different terms like purpose, design, but they all get to the point of intent. So that was a legal error. And the record confirms there is no specific intent here. So had the court focused on specific intent as required by the case law, it would have found no salvage. Now, I'd also like to talk about the damages award in this case. I think the clearest error is that the district court found this case required a lower award than this court previously approved in Margate. In Margate, the court said that the extraordinary facts of the rescue there supported the highest possible award on all of the relevant factors under Blackwell. In this case, the district court said three out of the ten salvage convention factors, two out of the six Blackwell factors, those largely overlap, were not demonstrated. And so for that reason, the court said the award should be lower than Margate. But then the court went on to award a higher percentage of the salvage property value than the court did in Margate. It said lower award, but it ended up awarding a percentage that was nearly twice as high. And this court explained in Margate that that type of outcome-based analysis is inappropriate. In Margate, the court rejected the idea that you can use a higher percentage to achieve a desired amount. Instead, the percentage has to be determined based on the factors, and then you apply it to the property value of the salvage property, and that's how you get the number. Here, had the district court analyzed just the factors on their own? According to its own finding that the award needed to be less than Margate because the factors didn't support the same level of award as in Margate, it had to use a lower percentage than 20%. And to be clear, 20% is a historically high number. In Margate, the court laid out a great chart and cited the Gilmore and Black treatise in footnote 28, which said that 20% is the maximum. That is historically high. That is extraordinary, once-in-a-generation type salvage efforts. Margate itself was only 12.5%, and the facts in Margate are incredibly compelling. There's an oil tanker with 9 million gallons of fuel oil. When it undertook the rescue, it was drifting toward the shoal. When it finally succeeded, its propeller was churning mud. So those facts, a crew of 25 worked for two and one-third days. Completely different from the facts here. Now, the court found that the plaintiffs acted with great skill and that the conditions were dangerous, but in comparison to Margate, the time worked substantially less, the number of people substantially less, and the value of the salving vessel, the court said, substantially less. That is why the court said the award should be lower than the award in Margate, and yet it departed from that when it actually entered the percentage. If this award of 20%, which again, this court in Margate and the treatise it relied on has said is the highest possible in American law, if an award of 20% applies here, that's just going to dramatically change the law of salvage, if that is allowed to stand. While plaintiffs, even if this court concludes that these plaintiffs did successfully effect a salvage, the district court's findings do not support any conclusion that this is one of the most incredible salvage efforts in American history. So 20% is— —of memory, what's the dollar amount? The dollar amount is $3.76 million, and the award in Margate was, I believe, $4.25 million. So the dollar amount is less because the value of the salved property is less, but again, the percentage is nearly twice as high. And finally, the district court erred by considering benefits to third parties in the damages award. The court said, in its opinion, courts can consider the benefit that third parties obtain from salvage operations, and it cited this court's decision in All Seas. Well, that was error. What this court said in All Seas was that traditional salvage law does not reward a salver for saving the shipowner from liability for damages to other ships, oil rigs, or other property. And more recently, in Dorothy Jay, the Eastern District of New York said the salvage convention, the more recent law that the district court applied here, also does not allow consideration of third-party liability as a factor in salvage awards because of the difficulty and raw unpredictability involved in estimating the monetary value of a reduction in liability. This case demonstrates the wisdom of that decision to not consider benefits to third parties in salvage awards. When addressing environmental liability, the district court, in this case, found that the plaintiffs had failed to establish, and I'm quoting here from paragraph 28a, specific damage that was prevented by the salvage plaintiffs. So given that finding, that the benefits to third parties, that there were no specific benefits shown in the context of environmental liability, it makes perfect sense that the general law that benefits to third parties should not increase salvage awards should have been applied here. And that's another reason why the salvage award was an abuse of discretion. Thank you, Your Honors. All right. Thank you. You have reserved your vote of time. All right. Mr. Flanagan. May it please the court. Thomas Flanagan on behalf of the salvage plaintiffs. I'd like to address three points in my time today. First, the parties agree that the salver's motive, why they did what they did, changes nothing. So calling motive specific intent is not an end around that rule. Why the plaintiffs rescued 23 ARTCO barges as a hurricane battered New Orleans has no bearing on ARTCO's liability. Second, even if the law were different, the district court found that the plaintiffs acted with an intention to benefit property other than their own. So they satisfied any supposed intent requirement. And third, on quantum, liberal compensation is the rule, and determining what to award is left to the sound discretion of the district court. The court's reasoned award here is well within historical bounds. Let me talk about this idea of specific intent. The law of salvage goes back some 3,000 years, but we don't need to go that far today. Just to 1879 in a case called the Sabine from the U.S. Supreme Court. And the Sabine established that parties have to establish three elements for what's called pure salvage as distinct from contract salvage. They need to show property in marine peril. They need to show voluntariness. In other words, they were not compelled to do what they did by law or contract. And they need to show success in whole or in part. ARCO proposes a fourth element, that the salvers have the specific intent in their minds to benefit the owner of the property. And it's unclear whether they envision that as an exclusive intent or, Judge Stewart, as to your question, whether you can have an intent to benefit more than one person at any one time. But before addressing why the plaintiffs did what they did, I think it's helpful to address what. The what should come before the why. The district court made express findings on what the plaintiffs did. They worked throughout the night as a hurricane battered New Orleans, high winds on the Mississippi River, and they were successful in slowing, catching and beaching slash mooring 23 vessels that broke away from ARCO's fleet. That's record page 1065. So these findings are well supported. They should be well supported in any case. So that leads to the why. Why did they do it if, in fact, it matters? And cases and commentators say over and over again that motive doesn't matter. It could be altruism, hope of financial gain. It could even be error, as the Second Circuit and Benedict on Admiralty pointed out. Now ARCO agrees with us that motive is never a consideration. That's on page one of its reply brief. And on page two of its reply brief, it says, and I quote, the law does not inquire into why the plaintiff decided to offer voluntary service. So why is off the table? We can trace ARCO. Nevertheless, it's still arguing, though, motive in the garb of specific intent. But this is a motive argument in disguise. After all, another way of asking what someone's intent is to ask, why did they do it? That's the same reason why someone would ask about motive. And in the district court, the defendant argued that this was a question of motive. He said the court should dismiss the case because the plaintiffs were, quote, motivated by self-interest. That's page 1854. But salvage law is simply not concerned with why a party takes some action. We can trace ARCO's error to a commentator's shorthand reference to the merit. And what happened in the merit is that volunteers put out a fire at Pier 5. That's where all of the water was trained. All of their physical activities were trained on Pier 5 and putting out that fire. But not far away at Pier 4 was a vessel, a vessel called the Leviathan. And the Leviathan was perilously close to the fire and was getting charred. When the firefighters and the volunteers put out the fire at Pier 5, it redounded to the benefit of the Leviathan. And those volunteers sued the Leviathan and said that we were entitled to salvage from you in the Supreme Court. And this is the rule of merit. Whatever the aid or benefit resulting to the Leviathan, it was incidental and indirect. For that reason, a claim for salvage cannot be sustained. There's other cases, City of Columbia, the San Cristobal from this court, that are all to the same effect. When you deal with a fire or a problem at Location 1 or Vessel 1, the fact that someone at Location 2 or Vessel 2 experiences a benefit, well, it's not going to entitle the plaintiffs to a salvage award from the secondary beneficiary. If we apply that rule here, what it would mean is that the plaintiffs could not recover against any downriver businesses. And they could not maintain a salvage action in court and contend that by virtue of our beaching, catching, saving the ARCO vessels, we spared you a lot of trouble. And no doubt they did. But we could not go against those downriver businesses and recover. That's the rule of the merit. Now here, there's no doubt that ARCO was the direct beneficiary of the plaintiffs' actions. After all, it was their vessels that were stopped, caught, turned around, moved, beached, and watched over all night to make sure that they didn't get back into the turbulent Mississippi. There was nothing accidental or inadvertent or incidental about the benefit conferred on ARCO through the salvage plaintiffs' actions. But there is a different path for the court. Might be an easier path, not necessarily. But it wouldn't matter because even if there's a specific intent requirement, the district court found that the intent here by the plaintiffs went beyond protecting their own property. And just for clarification, it was not to protect downriver property. It was to protect non-lower river surface property. In other words, property other than their own. And that's at Findings of Fact, pages 1064 and 1065. The district court found the plaintiffs' testimony, quote, particularly credible on whether their intentions went beyond protecting their own property. And the court noted this sincerity in particular of Troy Corralt, the father of Nicholas and Andre and one of the owners of Lower River. When he testified, I am a mariner. A mariner does correct for everyone. Whether it's his barge, a ship's barge, it does not matter. Everybody is the same level. Your equipment is their equipment. It's all the same. Try to save it. Nothing supports upsetting the finding of liability based on a new intent requirement because the salvage plaintiffs had the intent to benefit others and directly benefited ARCO in this case. Our counsel opposite argues in brief that affirming the district court's determination or nondetermination of specific consent in effect opens some gaping hole in fair time law that you know sort of a parade of horribles if you will damage wise and so on and so forth the argument being the holding it should be restrained to stay within the recognized limits etc what do you say? Well I would say the district court is within recognized limits again it's hard to imagine more direct physical action to save someone's property than using a towboat against 50 miles an hour winds chasing it down the Mississippi River once you get it even then being pushed to football fields downriver by the velocity of these heavy barges perhaps weighing up to 1,600 tons so it's hard to imagine a case that satisfies the rule of the merit more than this one and I would also emphasize your honor there's no floodgates here because the rule of merit would suggest that those other beneficiaries down the line well they're safe from any salvage action these salvage plaintiffs did not sue and could not have sued these other businesses who were spared further direct hits by these breakaway barges so one would imagine if this were such a sea change we would see cases that would make a distinction between motive and specific intent but these cases are not they're making a distinction between direct benefits and indirect and incidental benefits ARCO was in position one its barges were saved directly let me turn now to the award itself this court in Margate calls for liberal awards and other courts have said that scanty awards contravene public policy the court also calls for deference so long as the district court applied the correct legal principles the award should be affirmed unless it's so grossly excessive or inadequate as to be an abuse of discretion now here unlike many cases unlike even in Margate there was not one vessel saved there were 23 vessels that were coming downriver in the dark with no aid in sight no Coast Guard even the contract service retained by ARCO refused to go out on the river because it was too dangerous the value of those vessels was some 18.8 million dollars the court awarded 3.76 million which is millions less than the inflation adjusted award in Margate that inflation adjusted award would be 6.9 million dollars in 2021 the district court did the analysis so here's some 3.2 million dollars more case you know definitionally you started 1876 so obviously age antiquity doesn't necessarily change a lot but I asked you know Margate's a 1998 calendar case which you know was a while from where we are does it matter because you get percentage as opposed to the dollar in other words if you're analyzing it on the dollar value who you might discern well that was 1998 money and this is 2025 but you did it on the percentage so does it matter you know that that was 1998 that's not it now that's just a question because you all do this work all the time and your honor that the the fact that it's a 1998 case I think as you pointed out these cases are so few and far between so this is not this is a rarity that we have a case like this in fact this is to my knowledge the first federal case based on salvage on the Mississippi River so very uncommon cases I don't think there's anything about 1998 in particular I do think it's fair to look at the inflation adjusted award and one more point on percentages what Margate said is we've got very valuable property well the percentage will probably come down on the other hand when we have property that's not worth all that much and if you would give someone 5% of a vessel that doesn't have great value well you're not giving a meaningful recovery so the percentage is somewhat turn on the amounts here our amount is about 18.8 million again compared with 33 million in Margate so I think the percentage here is the trend upward because of that smaller amount what Margate told us as well as in terms of looking at precedent and applying it that it would look to its prior jurisprudence and I quote in only the most differential and general way I think that's one of the errors that our opponents make is that they treat Margate is establishing almost like a workers compensation schedule that if that X is a proper amount here then our task is simply to chip away to analyze and to come up with why based on some unique facts in our case and I don't think that's the proper approach that's not what Margate prescribed again to look at precedent in only a differential in general way council's argument is eloquent as it was was not differential or general it was granular and detailed but I don't think we can do that the second mistake is related it assumes that Margate was the highest possible award on those facts and that it's impossible to go higher but that's not so the court in Margate said that the number there was smack in the middle of the historical range and the court said it was strained to find any error much less an abuse of discretion so here the district court applied the convention factors and the black wall factors and everyone agreed that but for the environment they're the same again the value of the vessels eighteen point eight million that's undisputed the other side had an expert at trial chose not to call him send him home they did stipulate that that experts analysis would have followed the same methodology so we've got the starting point eighteen point eight which the court say is one of the most important factors under the convention or the black wall factors the environment is not an issue we didn't cross appeal we acknowledge the deference due to fact findings of the district court and that gives it gives us to number three which is the measure of success and the district court found that the salvage plaintiffs were quote highly successful the Artco barges were in imminent danger of complete loss and that's record peaks 1073 and the record bears that out Artco barges struck the shell fueler owned by the plaintiffs struck the St. Charles owned by the plaintiffs struck the Atlantic Maya a 600-foot ocean going vessel knocked it out of commerce and had to be towed back to South America with one million dollars in damage and caused millions of damage millions of dollars of damage at the Crescent ship dock now counsel says the court should not have considered benefit to third parties well all sees in an opinion by judge Rubin said that the economic interest in third parties makes perfect sense to consider and the only reason the court didn't was because of the limitation of liability act and so that's where things get controversial in different cases where courts consider whether they can increase the value of vessels here 18.8 million to consider averted liability that's not what happened here what happened here is like what happened in a case called Trico which judge Clement handled as a district court judge it was considered as one factor among many in looking at the full picture of the outcome of the salvage plaintiffs and it stands to reason that someone in Artco's position and any rational economic actor would pay more if they knew that their breakaway barges could cause all manner of chaos and entangle them in litigation and risk a rational actor would pay more and Margate tells us to consider that if there could be a negotiation between property owner and salvage what would they consider and what would they regard as fair well one consideration would surely be what are the consequences of these breakaway barges left unattended in a very developed part of South Louisiana moving on the nature and the degree of the danger the district court found extreme danger so dangerous was it that event 24 year old captain Nicholas Corral got behind the the shell fueler and single-handedly along with lookouts his father his brother in a support role track down these barges down the Mississippi River brought them back beached them and made sure they stayed put overnight again in strong winds and turbulent conditions Artco had someone on contract that was supposed to look after its 500 vessels when it sent its own employees home and those men testified they're both named Captain Billy out a father and son and they both said they were unwilling to go out on the river that night because it was too dangerous they would go the next morning and yet Captain Nicholas Corral in in an action of uncommon bravery went out there and the district court recognized that the skill and the efforts it was extraordinary skill we had an expert witness on tugboat operations Captain Michael Berry and he spoke to that the other factors the promptness of the services the availability and use of other vessels here there was exactly one group of people willing to help out Artco as Hurricane Ida passed through New Orleans and they're the salvage planets Artco's employees didn't help their contracted service did not help so in conclusion these are fact-specific cases we can't look to another case and to say that that case sets a value and we have only to adjust numbers and spit out a particular award this district court had discretion to consider all of these factors she awarded a lot less millions less on an inflation based basis than the Vargate did and so for that reason in light of the perilous and extraordinary service we at best this court affirmed the district court thank you thank you thank you your honors a few points on rebuttal first my friends talked about direct action as involving physical contact with another vessel counsel said that's the lesson to draw from merit not what you intend to save what the salver intends to save but what property what object the salver has physical contact with the case law just does not support that the Benedict treatise says this succinctly section 26 of Benedict on Admiralty says the salvage service need not always take the form of physical assistance rendered to the imperiled property and there are ample cases where the was physically directed to another piece of property but the plaintiff intended to rescue a vessel like the Nishimini which I spoke about before where the salvers extinguished a fire on a dry dock with the intent to benefit a barge more to that dry dock that was salvage meanwhile there are cases where the plaintiffs physically act on an object but they don't intend to rescue that object that's a case like Barry where the where the plaintiffs pulled up lobster traps but they were not intending to rescue those lobster traps in that case no self despite the physical action on those lobster traps the case law simply does not support this notion of physical contact being the be-all and end-all for salvage instead specific intent is the concept that lines that runs through the case law and specific intent to rescue art co-barges is not found here that finding about saving non lower river property is not a finding district court made no finding that the plaintiffs intended to save art co-barges now on damages my friend argued that the damage award should be reviewed deferentially well it's true that it's reviewed for abuse of discretion this court made clear in Margate and all sees that that review is not toothless this court is free to enter a different damages award if it finds it required by the law second counsel argued that Margate supports this idea that you can move the percentage up if the value of the property salve is lower Margate said exactly the opposite it did recognize that there is a specific category of cases where the value of the self property is so low that applying a low percentage wouldn't give the salver back their costs and the court said in that small category of cases we need to make sure the salver at least gets their costs so for those especially low value cases we will adjust a higher percentage but in the world of high value property like this nearly 19 million dollars of barges in question we don't do that in the world of high value property you fix the percentage and you are not allowed the court was very explicit that the district court in Margate erred by saying I will just adjust the percentage up if the appellate court finds that the property value is is lower than I think it is Margate said that is wrong it doesn't give sufficient weight to the value of the property You don't dispute that all of ARTCO's vessels were salvaged, right? So we there was a dispute in the lower court about which vessels were salvaged the court found 23 barges were salvaged and we haven't challenged that on appeal okay so did they accidentally salvage them? They did not intend to rescue those ARTCO barges Did they accidentally do it? They they did not accidentally do it they did it for the benefit of both themselves their own property You just argued you had third-party vendors in your crew and neither of those rescued, salvaged the 23 that you acknowledged, is that correct? I'm sorry can you repeat the question? Council officer says you had a third party concern engaged plus your not you salvaged retrieved or otherwise mitigated the damage to the 23 that you acknowledged, is that correct? So I may have spoken imprecisely the 23 barges were beached we don't agree that they were salvaged we think they were not salvaged because they didn't satisfy the requirements for salvage on your question about a contractor Mr. Court found that they were salvaged and that's not abuse of discretion then for the purpose of this question those 23 would be in the zone of properties that were salvaged, right? Those were beached the district court found they were beached by the plaintiffs From all those facts specific intent is often discerned indirectly in every kind of case because rarely can somebody get in somebody's mind so why would it be reversible error for the district court on this record on this facts with 23 vessels etc. etc. to conclude at the end that specific intent was shown on this record? Right, two responses your honor, first the court didn't find specific intent shown it found only an intent to rescue non lower river property which is not specific intent to rescue Artco barges under the case law which is about the defendant's vessel has to be the target intended target of the action that's the first answer and the second answer is the plaintiffs themselves their testimony was explicit. You got a red light, I just wanted a specific answer and I think you've given it to me. Thank you your honor, we'd ask that the judgment be reversed or in the alternative that the award be reduced. All right, thank you counsel we appreciate the argument in briefs in this case all the cases argued this morning along with the NOAs will be submitted the panel stands and recess until 9 a.m. tomorrow.